IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DANNY MURPHY COSTON,

    Plaintiff,     No. 2:10-cv-2009 MCE EFB P

    vs.

ANDREW NANGALAMA, et al.,

    Defendants.     <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

    Plaintiff is a prisoner at California State Prison, Sacramento ("CSP-Sac") and is proceeding without counsel in a civil rights action brought under 42 U.S.C. § 1983. Defendants have filed a motion for summary judgment. Dckt. No. 56. For the reasons that follow, it is recommended that the motion be denied in part and granted it in part.

**I.  The Complaint**

    This action proceeds on the verified complaint filed July 28, 2010, Dckt. No. 1, asserting that defendants were deliberately indifferent to his medical needs by discontinuing his morphine prescription on March 18, 2008 . *Id.* at 7-12.[1]

////

---

[1] Page numbers cited herein refer to those assigned by the court's electronic docketing system and not those assigned by the parties.

1

According to the complaint, defendants Nangalama, Duc, and Bal were physicians at CSP-Sac. *Id.* at 5-6. Defendant Hale was a licensed vocational nurse there. *Id.* at 5. Defendant Brimhall was a Health Care Manager at CSP-Sac and, as such, was responsible for implementing and enforcing prison medication management procedures. *Id.* at 6. Defendant Berchtold was Director of Nurses for CSP-Sac and, as such, was responsible for ensuring that all CSP-Sac nurses properly provided care and complied with medication delivery policies. *Id.* at 6.

Plaintiff asserts that he suffers from degenerative joint disease in his back, knee, and foot, with a severe "rotative" cuff tear in his left shoulder. *Id.* at 7. In early 2008, plaintiff had been provided with a prescription for morphine by prison physicians, including defendant Nangalama, to alleviate chronic pain. *Id.* at 7-8. Defendant Hale had delivered the medication on many occasions to plaintiff's empty prison cell with no instructions, labels, or names. *Id.* at 8. On March 18, 2008, a correctional officer discovered the morphine in plaintiff's empty cell, in violation of a prison policy addressing hoarding. *Id.* at 8-9. That same day, "defendants Nangalama and Hale abruptly stripped plaintiff of his prescribed pain medication morphine[.]" *Id.* at 9.

According to plaintiff, Hale replied, "Yeah! You don't look well at all," laughed, and walked away. *Id.* On March 23, 2008, plaintiff was suffering from morphine withdrawal and submitted a request for medical care. *Id.* Plaintiff alleges that Defendants Nangalama and Hale ignored this request and ignored "all of plaintiff's pleas for medical care on his chronic pain and his morphine withdrawal effects." *Id.* Plaintiff states that he suffered chronic pain, anxiety, confusion, physical illness, and restlessness, among other symptoms. *Id.*

On March 29, 2008, a nurse discovered plaintiff laying on the floor of his cell near the toilet, perspiring heavily with his head near a pool of vomit. *Id.* at 10. Plaintiff was taken to the prison emergency room and treated for morphine withdrawal. *Id.* However, according to plaintiff, unidentified caregivers at the emergency room refused to treat his chronic pain complaints. *Id.*

1    Plaintiff submitted an appeal regarding the lack of medical care for his serious medical
2 needs. *Id.* The appeal complained that plaintiff was prescribed the drug "with no verification
3 notice of narcotics physical effects, side effects, risks, legal impact or implications," that the
4 drug was incompatible with plaintiff's pre-existing prescriptions, that the morphine was
5 discontinued too abruptly causing withdrawal, and that deviation from the prison's medication
6 management policies had harmed him. *Id.* at 20-21.

7    Plaintiff alleges that by April 16, 2008, defendant Berchtold knew that defendants
8 Nangalama and Hale had denied plaintiff medical treatment. *Id.* In addition, plaintiff states that
9 he alerted defendant Berchtold on July 20, 2008 that defendant Hale was denying plaintiff
10 necessary medical care, but defendant Berchtold ignored plaintiff. *Id.* at 10-11. The same day,
11 plaintiff alerted defendant Brimhall that his constitutional right to medical care was being
12 violated, but defendant Brimhall also did nothing. *Id.* at 11.

13    On June 26, 2008, defendants Duc and Bal refused to intervene or provide plaintiff with
14 treatment after being alerted of the issues by reviewing plaintiff's appeal at the second level of
15 review. *Id.* at 12. Plaintiff informed defendants Duc and Bal that plaintiff was "not provided
16 with any medication treatment by Dr. Hamkar" (who examined plaintiff at the first level of
17 appeal). *Id.*

18    The court has dismissed plaintiff's claim against defendant Hale for delivery of the
19 morphine without labels or instructions. Dckt. Nos. 10, 15.

20 **II.    Defendants' Factual Assertions**

21    Defendants do not dispute the facts relayed in plaintiff's complaint except as follows.

22    Defendant Hale contends that he had no authority to discontinue plaintiff's morphine
23 prescription and did not discontinue the prescription (defendant Nangalama did). Dckt. No. 56-
24 1, Defs.' Separate Statement of Undisputed Facts ISO Defs.' Mot. for Summ. J. (hereinafter
25 "DUF") 12, 13. Defendants also state that they "are currently unaware of" plaintiff's March 23,
26 2008 request for medical care. DUF 14. Plaintiff's medical records do not contain the request,

3

indicating it was not received by the medical department. *Id.* Plaintiff's records do not indicate that he was in urgent need of medical care as of March 26, 2008, when he had a physical therapy appointment. DUF 15.

On April 16, 2008, defendant Berchtold determined that plaintiff's administrative grievance regarding his morphine prescription was not an emergency. DUF 21.

Defendant Brimhall was a Health Care Manager at CSP-Sac whose position was administrative in nature. DUF 26. He could not prescribe or discontinue medication to plaintiff. *Id.* He does not recall any alert from plaintiff in July 2008 and plaintiff's medical records contain no such alert. *Id.*

### III. Plaintiff's Response to Defendants' Factual Assertions

Plaintiff has submitted a declaration in opposition to the motion for summary judgment. Dckt. No. 61. Defendants object to the declaration because plaintiff did not include a statement that the declaration is made under penalty of perjury. Dckt. No. 66 at 3. Defendants also object that plaintiff has not authenticated the documents attached as exhibits and argue that they did not have time to determine the authenticity of the documents in the period allowed for composing their reply brief. *Id.*

These objections are overruled. At the summary judgment stage, the court looks not to the admissibility of evidence's form, but the admissibility of its contents. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). Plaintiff has represented that the matters in the declaration are based on his personal knowledge, and defendants do not dispute that assertion or raise any other objection to the declaration apart from the omitted verification. Defendants were granted one 14-day extension of time to prepare the reply brief and sought no additional time specifically to assess the authenticity of plaintiff's exhibits, which appear to be excerpts from plaintiff's medical records, created and maintained by prison officials. *See* Dckt. Nos. 64, 65. Plaintiff asserts that some of these documents have been authored by defendants, and defendants have not disputed those assertions, which they could easily have done within the time they had to

1 prepare the reply. Furthermore, "as a practical matter, it would be an abuse of this court's
2 discretion to refuse to consider such evidence offered by a pro se plaintiff at the summary
3 judgment stage." *Cooper v. Kaur*, No. CIV S-10-1057 GEB DAD P, 2012 U.S. Dist. LEXIS
4 1877, *2-4 (E.D. Cal. Jan. 6, 2012) (citing, among others, *Jones v. Blanas*, 393 F.3d 918, 935
5 (9th Cir. 2004) and *Fraser*, 342 F.3d at 1036-37); *see also Fryman v. Traquina*, No. CIV
6 S-07-2636 JAM DAD P, 2008 U.S. Dist. LEXIS 121357 at *31 n.5 (E.D. Cal. Oct. 23, 2008)
7 (overruling defendants' objections to plaintiff's medical records on the grounds that they are not
8 properly authenticated because "[i]t cannot reasonably be disputed that the records in question
9 are plaintiff's medical records from his prison file. Those records are created and maintained by
10 prison officials."). If this case proceeds to trial, plaintiff will have sufficient time to authenticate
11 the documents in question if necessary.

12 Plaintiff asserts that defendant Hale "engineered" the discontinuation of his morphine
13 prescription and has submitted a document, which plaintiff asserts defendant Hale authored,
14 dated March 18, 2008 containing a notation "D/C MS [possibly "morphine sulfate"] 30 mg."
15 Dckt. No. 61 at 4, 63-64. Plaintiff has also submitted Health Care Request forms for March 23
16 April 27 and June 12, 2008 regarding his symptoms and need for pain medication. *Id.* at 67-68,
17 92-93; Dckt. No. 61-1 at 1-2. Plaintiff declares that defendants did not respond to any of these
18 requests for care. Dckt. No. 61 at 5, 6, 7.

19 Plaintiff further asserts that he was prescribed Celebrex for pain on May 16, 2008 by a
20 Dr. Hamkar responding to his administrative grievance, but that he was never given the drug. *Id.*
21 at 6-7. Plaintiff claims that defendants Duc and Bal should have intervened to assure that the
22 Celebrex was provided when reviewing his appeal at the second level. *Id.* at 6-7, 78 (plaintiff's
23 indication that he was dissatisfied with the first level appeal response because staff had interfered
24 with the treatment ordered by Dr. Hamkar). According to plaintiff, defendant Nangalama
25 refilled the order for Celebrex on June 27, 2009, but never administered the Celebrex to plaintiff.
26 *Id.* at 7.

5

Plaintiff's declaration includes several paragraphs devoted to complaints regarding the treatment of a "new left foot deformity." *Id.* at 8. Plaintiff's complaint does not contain allegations regarding his treatment for a foot deformity, and thus the undersigned will disregard these allegations as beyond the scope of this case.

**IV.     Summary Judgment Standard**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand,"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted); *Celotex.*, 477 U.S. at 323 (If the evidence presented and any reasonable inferences that might be drawn from it could not support a judgment in favor of the opposing party, there is no genuine issue). Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that is determinative of the outcome of the case.

Concurrent with the instant motion, defendant advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. Dckt. No. 56;

*see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**V.     Analysis**

The Eighth Amendment of the U.S. Constitution protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

To succeed on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must establish that he had a serious medical need and that the defendant's response to that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical need exists if the failure to treat plaintiff's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Jett*, 439 F.3d at 1096. An officer has been deliberately indifferent if he was (a) subjectively aware of the serious medical need and (b) failed to adequately respond. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Deliberate indifference may be manifested by a prison official's intentional interference with a prisoner's medical treatment. *Jett*, 439 F.3d at 1096.

Defendants first argue that summary judgment must be granted on plaintiff's claims against defendants Duc, Bal, Berchtold, and Brimhall because those claims rest on a theory of supervisor liability, which is not available in a § 1983 action. Indeed, there is no respondeat superior liability under § 1983. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2003). That is, plaintiff may not sue any official on the theory that the official is liable for the unconstitutional conduct of his or her subordinates. *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1948 (2009).
////

Because respondeat superior liability is inapplicable to § 1983 suits, "a plaintiff must plead that each Government-official defendant, through the officials own individual actions, has violated the Constitution." *Id.* To be held liable, "the supervisor need not be directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury." *Starr v. Baca*, 633 F.3d 1191, 1194-95 (9th Cir. 2011) (quotations omitted). Nonetheless, a plaintiff must establish a causal connection between the supervisor's conduct and the plaintiff's claimed injury. *Id.* at 1196.

Plaintiff has provided evidence that defendants Duc and Bal were personally involved in the deprivation of adequate pain treatment by reviewing plaintiff's administrative appeal at the second level of review and refusing to intervene to assure that plaintiff received proper treatment. Further, it is undisputed that defendant Berchtold was personally involved when she designated plaintiff's administrative appeal as a "non-emergency." While defendants argue that appeals reviewers can never be liable as a matter of law, this is not the law where the appeal issue is medical and the reviewers are medically trained. Judge Snow has aptly described the law on this issue in *Pogue v. Igbinosa*, No. 1:07-cv-01577 GMS, 2012 U.S. Dist. LEXIS 23150 at *23-24 (E.D. Cal. Feb. 23, 2012):

> Prisoners have no Fourteenth Amendment liberty interest in a right to appeal adverse decisions by prison authorities. *See Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure."). In *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003), the Ninth Circuit confirmed that a prisoner may not challenge an administrative disciplinary appeals process on Due Process grounds, confirming that "inmates lack a constitutional entitlement to a specific prison grievance procedure."
>
> The Ninth Circuit has not ruled on whether, in a prison that provides a grievance process, a prisoner may state a valid Eighth Amendment claim against an individual prison official who hears and denies an appeal in that process. The district courts are divided on the question even within the Eastern District of California. At least one decision in the Eastern District, relying on *Ramirez* and *Mann*, reasoned that no constitutional claim of any sort may be based upon the administrative appeals process. In *Martin v. Tilton*, 2008 U.S. Dist. LEXIS 76348, 2008 WL 4454045, at *5 (E.D. Cal. Sep. 30, 2008), the court dismissed an Eighth Amendment complaint predicated upon the fact that prison officials had denied a grievance, writing "to the extent [plaintiff] asserts that [defendants] are liable because they participated in the handling of his inmate grievances, he

cannot state a claim upon which relief can be granted."

Other district courts have disagreed, at least regarding Eighth Amendment complaints against medically-trained officers who deny appeals requesting specific care. *See, e.g., Coleman v. Adams*, 2010 U.S. Dist. LEXIS 62197, 2010 WL 2572534 (E.D. Cal. June 22, 2010); *Arreola v. Dudley*, 2010 U.S. Dist. LEXIS 87441, 2010 WL 3033806 (E.D. Cal. July 30, 2010); *Herrera v. Hall*, 2010 U.S. Dist. LEXIS 70611, 2010 WL 2791586 *4 (E.D. Cal. July 14, 2010). These courts have generally reasoned that, although *Ramirez* and *Mann* prohibit Due Process claims regarding the handling of appeals, they "do not touch upon whether an appeal reviewer's actions can be considered 'cruel and unusual' within the meaning of the Eighth Amendment." *Coleman*, 2010 U.S. Dist. LEXIS 62197, 2010 WL 2572534, at *7. In *Coleman*, the district court reasoned that the plaintiff's reference to his administrative appeal (in that case, for a request for a lower bunk and pain medication needed to treat previous injuries) "merely bolsters his allegation that supervisory personnel had actual awareness of the risk to Plaintiff's safety."

Of particular note are cases in which plaintiffs have filed administrative appeals requesting particular medical treatment for particular ailments. In *Arreola*, a patient who had been diagnosed with Hepatitis C was transferred to a new prison, and then was told by a prison doctor there that he did not have the disease. He filed an appeal, which the same doctor rejected; the court found that the doctor could be liable because "constitutional violations are not shielded from liability because they occur in part within the context of an administrative interview." *Arreola*, 2010 U.S. Dist. LEXIS 87441, 2010 WL 3033806, at *4. In another Hepatitis C case, the district court found that an appeals reviewer who was medically trained but not the original treating physician could also be liable under the Eighth Amendment, so long as that reviewer "had the authority and opportunity to prevent the ongoing violation," because in such a case "a plaintiff may be able to establish liability by alleging that the appeals coordinator knew about an impending violation and failed to prevent it." *Herrera*, 2010 U.S. Dist. LEXIS 70611, 2010 WL 2791586, at *4 (E.D. Cal. July 14, 2010) (citing *Taylor*, 880 F.2d at 1045). The emerging consensus, therefore, is that a medically-trained official who reviews and denies an appeal is liable under the Eighth Amendment when a plaintiff can show that the official knew, at least in part, from reading the appeal that the plaintiff had a serious medical issue and nevertheless chose not to offer treatment. *See Sevilla v. Terhune*, 2009 U.S. Dist. LEXIS 41518, 2009 WL 1211393, at *6 (E.D. Cal, 2009) (plaintiff "will likely also be able to state a cognizable claim against defendants with medical training if they reviewed and ruled against Plaintiff in his medical grievances/appeals on that same issue").

Here, plaintiff has alleged that he was denied treatment for his chronic pain, and the evidence indicates that defendants Duc and Bal – both doctors – were made aware of this allegation of ongoing suffering. Whether there were medically acceptable reasons for the deliberate choice to withhold the medication is another question. But the mere fact that this awareness came in the course of a grievance review does not shield these defendants from liability under § 1983 if, in

11

1 fact, the denial of medication under the circumstances amounted to deliberate indifference for
2 purposes of the Eighth Amendment.

3 As to defendant Brimhall, the court need not determine whether he was sufficiently
4 personally involved in the alleged deprivation because plaintiff has not provided sufficient
5 evidence to raise a triable issue of material fact that defendant Brimhall was aware of plaintiff's
6 need for pain treatment. Plaintiff's claim against defendant Brimhall rests solely on a "notice"
7 plaintiff sent to defendant Brimhall in July 2008. Plaintiff has provided the court with that
8 notice, which plaintiff also sent to other individuals including defendants Berchtold and Hale.
9 Dckt. No. 61-1 at 5-8. The notice failed to inform that plaintiff was then currently suffering pain
10 that is not being treated. Instead, it simply states that "notice is herein given" that plaintiff's
11 constitutional rights were being violated. The document thus failed to make defendant Brimhall
12 subjectively aware of plaintiff's serious medical need, and summary judgment in favor of
13 defendant Brimhall is appropriate.

14 Similarly, the court need not determine whether defendant Berchtold was sufficiently
15 personally involved, because plaintiff has not provided sufficient evidence to raise a triable issue
16 of material fact that defendant Berchtold was aware of a serious medical need or responded
17 unreasonably to plaintiff's needs. Defendant Berchtold argues that she designated his appeal as
18 a non-emergency because his appeal really was not an emergency. According to defendant
19 Berchtold, "how [plaintiff] would do on pain medication other than morphine would take time to
20 assess and was therefore not an emergency." Dckt. No. 56-2 at 8-9. Review of the record
21 demonstrates that the appeal did not apprise defendant Berchtold of a current emergency. At that
22 time (April 2008), plaintiff had already been treated for morphine withdrawal, and he did not
23 state in his initial appeal documents that he was currently suffering from a condition requiring
24 urgent treatment. *See* Dckt. No. 61 at 77, 79. Because the undisputed evidence shows that
25 defendant Berchtold was not subjectively aware that plaintiff was suffering from a medical need
26 that required that his appeal be processed as an emergency, summary judgment in defendant

12

Berchtold's favor is appropriate.

Defendants next argue that none of them deprived plaintiff of anything sufficiently serious to give rise to an Eighth Amendment violation or otherwise deny, delay, or interfere with his treatment. First, defendant Nangalama argues that he simply acted on information from custody staff that plaintiff was hoarding his morphine in discontinuing that medication and provided plaintiff with alternate medication which plaintiff refused to take. Defendant Nangalama fails to speak to plaintiff's allegation that defendant Nangalama did not address plaintiff's serious medical need not to be removed from the morphine "cold turkey" or to be adequately treated for withdrawal symptoms. Further, the evidence is in dispute as to whether defendant Nangalama ensured that plaintiff received adequate substitute pain medication. Lastly, there is a dispute as to whether defendant Nangalama ignored various health care requests plaintiff submitted to the medical department. Accordingly, there is a triable issue of material fact as to whether defendant Nangalama deliberately and indifferently deprived plaintiff of adequate treatment for a serious health need.

Second, defendant Hale argues that he was not responsible for the discontinuation of plaintiff's morphine prescription. Again, however, the evidence on this point is disputed – plaintiff has submitted a medical chart purportedly authored by defendant Hale ordering that the morphine be discontinued. Moreover, defendant Hale has not specifically disputed plaintiff's claim that on March 19, 2008, plaintiff asked defendant Hale for pain treatment, but defendant Hale laughed and did not provide treatment. *See* Dckt. No 56-4 at 71, Hale Decl. at ¶ 7 ("I never intentionally or deliberately denied Inmate Coston medical care and/or treatment."). Further, there is a dispute as to whether defendant Hale ignored various health care requests plaintiff submitted to the medical department. Accordingly, there is a triable issue of material fact that defendant Hale deliberately and indifferently deprived plaintiff of adequate treatment for a serious health need.

////

Third, defendants Duc and Bal argue that defendant Duc properly reviewed plaintiff's appeal on behalf of defendant Bal at the second level of review and made appropriate orders. However, plaintiff has submitted evidence that he indicated on his appeal form that he was dissatisfied with the first level response because Dr. Hamkar's ordered treatment was somehow being interfered with, thus apprising defendants Duc and Bal of plaintiff's claim that his need for treatment was ongoing. While defendant Duc replied generally that "[t]he staff did not interfere with the treatment of your condition," plaintiff has declared that he was never provided with the ordered Celebrex and that defendants Duc and Bal did not intervene to assure that he was. Accordingly, there is a triable issue of material fact as to whether defendants Duc and Bal failed to intervene to ensure that plaintiff received necessary treatment for his serious health need.

All defendants claim that plaintiff cannot prove his claim of deliberate indifference without expert medical testimony, citing *Hutchinson v. United States*, 838 F.2d 390 (9th Cir. 1988). That part of *Hutchinson*, however, dealt with a medical malpractice claim brought under the Federal Tort Claims Act which is governed by California law.[2] The California courts had specifically incorporated a requirement for expert evidence on the standard of care into the state court standard for summary judgment in medical malpractice cases. *Id.* at 392-93. While there may be significant practical limitations of the plaintiff's ability to proceed, defendants have provided the court with no authority that federal courts also require expert evidence in *every* medical deliberate indifference claim brought in federal court and that the absence of an expert requires a grant of summary judgment. Instead, the relevant standard is provided by Federal Rules of Evidence 701 and 702, which together require expert testimony on matters "based on scientific technical or other specialized knowledge" necessary to help the factfinder "understand the evidence or determine a fact in issue." Defendants do not explain why the issues presented by this case – essentially, whether defendants took plaintiff off morphine without treating and

---

[2] The *Bivens* claims of deliberate indifference were dismissed because they were predicated on mere negligence which could not support a claim under the Eighth Amendment.

14

managing his withdrawal symptoms and then failed to provide follow-up pain management – are so complex that an expert is necessary. Nor do they address why, if the court needs elucidation of the medical issues by a medical expert, an independent expert should not be appointed in this action.

Lastly, defendants assert this obtuse argument in favor of a finding of qualified immunity:

> The law did not put Defendants on notice that they had to prescribe nothing other than Morphine in a case such as COSTON's. Doctors use their medical expertise and best judgment in prescribing medications for their patients. A reasonable public official would believe doctors conduct [sic] of trying different pain medications is lawful. It happens to most of us at one time or another. Accordingly, Defendants are entitled to qualified immunity[.]

Dckt. No. 56-2 at 15. It is difficult to discern from that statement the precise basis for defendants' assertion of qualified immunity. The law, however, has been clear for sometime that deliberate indifference to an inmate's serious medical need violates the Eighth Amendment. At the time relevant here (2008) a reasonable official was on notice that depriving an inmate of necessary pain medication, failing to treat for serious narcotics withdrawal symptoms, and failing to provide treatment for severe chronic pain violated the Constitution.

**VI.  Recommendation**

For all of the above reasons, the undersigned RECOMMENDS that the July 20, 2012 motion for summary judgment (Dckt. No. 56) be granted as to defendants Berchtold and Brimhall and denied as to defendants Nangalama, Hale, Duc, and Bal.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections

////

within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 28, 2013.

/s/ Edmund F. Brennan
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE